UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUSTER PERNELL BURNS, Jr.,

        Petitioner,

v.                                   Case No. 4:23-cv-13223
                                        F. Kay Behm
JEFF TANNER,                    United States District Court Judge

        Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Luster Pernell Burns, Jr., ("Petitioner"), incarcerated at the Macomb

Correctional Facility in New Haven, Michigan, filed a *pro se* petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his conviction

for first-degree criminal sexual conduct (CSC 1), Mich. Comp. Laws § 750.520b,

and tampering with evidence in a criminal case, Mich. Comp. Laws § 750.843a(6).

For the reasons that follow, the petition is **DENIED WITH PREJUDICE**.

## I.    Background

Petitioner was convicted following a jury trial in the Wayne County Circuit

Court.  This Court recites verbatim the relevant facts relied upon by the Michigan

Court of Appeals, which are presumed correct on habeas review pursuant to 28

U.S.C. § 2254(e)(1).  *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

Burns was convicted of sexually assaulting BY and intentionally destroying evidence of the crime. BY lived on the west side of Michigan and had met Burns through her boyfriend. In 2013, not long after BY's boyfriend had died, Burns invited BY to visit him in Detroit to celebrate her 21st birthday. BY anticipated that they would go to some nightclubs, but Burns convinced her to spend the evening at his house. Another couple joined them. During the night, BY suspected that Burns put something in a drink that he gave her, so she refused to drink it. She testified that after the other couple went into a bedroom, Burns pointed a gun at her, racked it, told her to go into another bedroom, and then penetrated her vagina with his penis. The next morning, he made her take a bath and he took the underwear that she had been wearing. Burns then dropped her off at the bus station.

While BY was waiting for the bus, a security guard asked if she needed help because she was crying and shaking. She told him that she had been sexually assaulted, and the guard called the police. BY directed the responding officers to Burns's neighborhood and identified the house where he lived. The police then took BY to a hospital for a sexual assault examination where evidence was collected and some injuries to her genital area were observed. The sexual assault kit remained in a warehouse until 2017 because of a backlog of sexual assault cases. In 2017, testing of BY's sexual assault kit revealed the presence of DNA that matched Burns's DNA profile.

Burns originally was tried in April 2018, but the trial court granted his motion for a mistrial because of a prejudicial statement by a police witness on questioning by the prosecutor. At a second trial in September 2018, the court again declared a mistrial, this time because the jury was unable to reach a verdict. Burns was convicted at his third trial.

*People v. Burns*, No. 349102, 2021 WL 3700097, at *1 (Mich. Ct. App. Aug. 19, 2021).

The Michigan Court of Appeals affirmed Petitioner's conviction, but vacated the sentence and remanded for resentencing. *Burns*, 2021 WL 3700097, at *1, 7. The Michigan Supreme Court denied Petitioner leave to appeal. *People v. Burns*, 509 Mich. 866 (2022).[1]

Petitioner seeks habeas relief on the following grounds:

I.    The prosecutor's intentional misconduct in a previous trial which goaded the defense into moving for a mistrial, which barred retrial in this case pursuant to double jeopardy.

II.   Petitioner was deprived a fair trial on the ground of juror misconduct, where a deliberating juror was exposed to extraneous influences, which created a substantial possibility of jury influence.

III.  Petitioner was denied due process of law when he was convicted on the basis of insufficient evidence.

## II. Standard of Review

Title 28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State

---

[1] On remand to the trial court, Petitioner was resentenced to concurrent prison sentences of 11 years 3 months – 95 years for the CSC I conviction and 6-10 years for the tampering conviction. Petitioner did not appeal this amended sentence.

court shall not be granted with respect to any claim that
was adjudicated on the merits in State court proceedings
unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the
> Supreme Court of the United States; or
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light
> of the evidence presented in the State court
> proceeding.

A decision of a state court is "contrary to" clearly established federal law if
the state court arrives at a conclusion opposite to that reached by the Supreme
Court on a question of law or if the state court decides a case differently than the
Supreme Court has on a set of materially indistinguishable facts. *Williams v.
Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when
"a state court decision unreasonably applies the law of [the Supreme Court] to the
facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the
writ simply because that court concludes in its independent judgment that the
relevant state-court decision applied clearly established federal law erroneously or
incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks
merit precludes federal habeas relief so long as 'fairminded jurists could disagree'
on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.
86, 101 (2011). To obtain habeas relief in federal court, a state prisoner is required
to show that the state court's rejection of his or her claim "was so lacking in

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.,* at 103.

### III. Discussion

### A.    Claim # 1. The Double Jeopardy claim.

Petitioner first argues that his Fifth Amendment right against being placed in double jeopardy was violated when the judge permitted the prosecutor to re-try Petitioner after the judge declared a mistrial at Petitioner's first trial.  Petitioner contends that the judge should have dismissed the case with prejudice because the prosecutor through her misconduct intentionally provoked defense counsel into requesting a mistrial.[2]

As an initial matter, Respondent argues that Petitioner's Double Jeopardy claim is procedurally defaulted because he failed to object to being tried a second time following the declaration of the first mistrial.

Respondent is correct that Double Jeopardy claims can be procedurally defaulted if they are not preserved in the state courts in a proper manner.  *See Scuba v. Brigano*, 527 F.3d 479, 486 (6th Cir. 2007); *Smith v. State of Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 432 (6th Cir. 2006).  However, the Sixth Circuit

---

[2] Petitioner's second trial also ended in a mistrial because the jurors were unable to reach a verdict.  When a judge discharges a jury because the jury is deadlocked and unable to reach a verdict, the Double Jeopardy Clause does not prohibit a new trial for the defendant before a new jury. *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citing *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824)).  Petitioner does not argue that his retrial following the second mistrial violates the Double Jeopardy Clause.

has suggested that a criminal defendant does not waive a Double Jeopardy

challenge when the prosecutor through his or her misconduct provokes a defendant

into requesting a mistrial.  *See e.g. United States v. Robinson*, 99 F.4th 344, 361

(6th Cir. 2024).  The First Circuit has suggested the same.  *See United States v.*

*McIntosh*, 380 F.3d 548, 557 (1st Cir. 2004) (If prosecutor purposefully instigated

mistrial or if he committed misconduct designed to bring one about, Double

Jeopardy Clause may be invoked as bar to further prosecution notwithstanding

defendant's consent or failure to object to mistrial).

"[F]ederal courts are not required to address a procedural-default issue

before deciding against the petitioner on the merits."  *Hudson v. Jones*, 351 F.3d

212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).

"Judicial economy might counsel giving the [other] question priority, for example,

if it were easily resolvable against the habeas petitioner, whereas the procedural-

bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.

Petitioner's Double Jeopardy claim is meritless; regardless of whether the claim

was procedurally defaulted, the claim fails on the merits.

The Michigan Court of Appeals initially set out the underlying factual basis

of the Double Jeopardy claim:

> At Burns's first trial, the prosecutor questioned the
> officer-in-charge about BY's claims that she was afraid
> of Burns. The officer testified that BY told him she was
> afraid of the gun and of things that she had heard from
> Burns. The prosecutor asked what BY told the officer

6

that she had heard from Burns before. The defense
lawyer asked to approach the bench for a sidebar.
Thereafter, the prosecutor asked the officer if BY had
told him what Burns had previously said that caused her
to be fearful of Burns. The officer responded that Burns
"made reference to somebody that had snitched at court,
and that in quotation, this was her words, that he said, "I
put the [racial slur] in the trunk." The defense lawyer
quickly asked to approach the bench, and she asked for a
mistrial.

The prosecutor vigorously opposed the motion and
defended her questioning of the witness. She asserted that
the question was intended to elicit testimony that Burns
had said something to BY that caused her to be fearful of
him. The prosecutor stated that she was expecting the
witness's answer about Burns making a comment about
someone "snitching" at court, but "was not expecting the
contextual addition" about Burns saying that he "put the
[racial slur] in the trunk." The trial court held that a
mistrial was warranted. In response to a question by the
prosecutor, the court indicated that it was "a manifest
necessity" to grant a mistrial because the court did not
believe that Burns would "get a fair trial." Thereafter, in
response to a question by Burns's lawyer as to whether
the court was going to "find prosecutor misconduct as the
underlining [sic] for the mistrial," the court responded
that it was "the prosecutor's misconduct in this one."
After the jury was dismissed, the court stated that it
needed "to clarify the record." The court explained that
in its ruling it "determined that there's a manifest
necessity for a mistrial and not prosecutorial misconduct,
and this matter will be retried."

*Burns*, 2021 WL 3700097, at * 2.

After discussing the applicable law on Double Jeopardy, the Michigan Court

of Appeals rejected Petitioner's claim:

7

Burns argues that the prosecutor's intentional misconduct led to the request for a mistrial. The trial court, however, did not find prosecutorial misconduct to be the basis for its grant of a mistrial. The court's finding in that regard is not clearly erroneous. The prosecutor asserted that she did not intend to elicit improper testimony. Instead, she told the trial court that the purpose of her question was to corroborate BY's testimony that she was afraid of Burns because of something she heard him say previously. The record reflects that during redirect examination, BY testified that Burns said that in Detroit, "they be throwing younger girls in the trunk of cars and burning them up." She testified that made her fearful because she was thinking that "he might be the one" who would do something like that. On re-cross-examination, the defense asked BY to explain when she had heard Burns make that statement, when it made her fearful, and where she was when she heard it. The defense lawyer then stated, "you didn't put that in your [written] statement," but BY testified that she "told that to the detectives." The prosecutor's question to the officer was "What did [Burns] say to [BY] in the past that caused her to be fearful." In light of BY's testimony, the prosecutor's question is not facially improper. And, although the officer's response to that question included a statement that Burns told BY that he "put that [racial slur] in the trunk," there is nothing on the record to suggest that when the prosecutor asked the question, that was the answer that she was attempting to elicit.

The court recognized this in its ruling. In response to the prosecutor's argument regarding the purpose of the question, the court stated, "I know where you're going and what you're trying to do is to corroborate her comment about the fear, but it did cross the line." Later, the court clarified that the prosecutor was "trying to corroborate why she was fearful, but [the officer] made a specific statement of what the defendant said." The court held that the *officer's* testimony crossed the line. Although the court went on to recite that it had warned

8

the prosecutor that she was "getting very close to the line" with her questions and that it asked if she wanted to speak with the officer before continuing, there is nothing in the court's holding indicating that it found that the prosecutor deliberately disregarded its warning and intentionally elicited inadmissible testimony so as to goad the defense into moving for a mistrial. Instead, after Burns moved for a mistrial, the prosecutor vigorously opposed the motion and defended her questioning of the witness, which suggests that not only was she not trying to provoke Burns into moving for a mistrial, but she also did not want one to be granted.

*Burns*, 2021 WL 3700097, at * 2-3 (emphasis original).

Where a criminal defendant moves for a mistrial, the Double Jeopardy Clause does not bar a retrial. *See Oregon v. Kennedy*, 456 U.S. 667, 673 (1982). However, where the prosecutor's conduct that gave rise to the defendant's motion for a mistrial was intended by the prosecutor "to provoke the defendant into moving for a mistrial," the defendant "may invoke the bar of double jeopardy in a second effort to try him." *Id*. at 679.  Nonetheless, the standard for determining whether the prosecutor's actions were intended to goad or provoke a mistrial "is exacting." *Phillips v. Court of Common Pleas, Hamilton Cty., Ohio*, 668 F.3d 804, 811 (6th Cir. 2012) (quoting *Martinez v. Caldwell*, 644 F.3d 238, 243 (5th Cir. 2011)).  "Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, ... does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." *Id*. (quoting *Kennedy*, 456 U.S. at 675–

9

76).  The relevant question is the prosecutor's intent.  "Intent generally is inferred from objective facts and circumstances." *Id.* A prosecutor's negligence in preparing the case for trial, which may lead to a mistrial, "is not enough to meet the narrow exception to retrial recognized in *Kennedy*." *Phillips*, 668 F.3d at 813.

As an initial matter, Petitioner points to the fact that the trial judge, in declaring a mistrial, initially found that the prosecutor had engaged in misconduct by asking the officer to recount what Petitioner said to BY that made her afraid of him.

This Court should not defer to the state trial court's pro-petitioner resolution because the AEDPA's standard of review is a "precondition to the grant of habeas relief [ ], not an entitlement to it."  *See Daniels v. Lafler*, 501 F.3d 735, 740 (6th Cir. 2007).   In any event, the trial judge later clarified herself and indicated that she was declaring a mistrial because of manifest necessity not because of prosecutorial misconduct.

The Michigan Court of Appeals reasonably concluded that the prosecutor did not intend to goad Petitioner into requesting a mistrial and that accordingly Petitioner's retrial did not violate the Double Jeopardy Clause.

First, Petitioner failed to show any sequence of overreaching which pervaded the entire first trial.  The prosecutor asked a single question to the detective, which even if objectionable, did not show an intent to goad a mistrial, but was at most, a bit overzealous or due to inexperience.  Moreover, the

prosecutor, in fact, resisted and was a bit surprised by the granting of the motion

for a mistrial.  All this militates against a finding that the prosecutor intended to

goad Petitioner to request a mistrial.  *See United States v. White*, 914 F.2d 747, 752

(6th Cir. 1990).  The Michigan Court of Appeals' conclusion that the prosecutor

did not intend to provoke a mistrial is further buttressed by the fact that the

officer's remark appears to be an unsolicited response to the prosecutor's open-

ended question, which even if carelessly crafted, did not on its face call for an

improper response by the detective.  *See Rogers v. Goord*, 371 F. Supp. 2d 348,

354–55 (W.D.N.Y. 2005).  Additionally, the prosecution had a strong case against

Petitioner and he has pointed to nothing in the first trial that had caused a setback

to the prosecution's case that might have made "a mistrial desirable."  *United*

*States v. Foster*, 945 F.3d 470, 475 (6th Cir. 2019).  Under the circumstances of the

first trial, there is "no indication that the prosecution encouraged and abetted the

'declaration of a mistrial so as to afford the prosecution a more favorable

opportunity to convict the defendant.'"  *Id.* (quoting *Kennedy*, 456 U.S. at 674).

"This was not, in other words, an attempt by the [prosecution] to seek a second bite

at the apple; it was just beginning its first."  *Id.*  In light of the fact that the mistrial

motion was based on a response to a single question, the fact that the prosecutor

opposed the motion for a mistrial, and the fact that the trial judge credited the

prosecutor and believed that she did not intend through her question to provoke a

mistrial, the Michigan Court of Appeals' rejection of Petitioner's Double Jeopardy

11

claim is reasonable, precluding habeas relief. *See Wooten v. Warren*, 814 F. App'x 50, 59 (6th Cir. 2020). Petitioner is not entitled to relief on his first claim.

**B.     Claim # 2. The extraneous influence claim.**

Petitioner next alleges he was denied a fair trial when a juror was allegedly exposed to extraneous information concerning the fact that he had discussed the jury deliberations with his sister and allegedly communicated this information to the other jurors. Alternatively, Petitioner argues his trial counsel was ineffective for failing to object to the manner in which the trial court handled the situation.

The Michigan Court of Appeals rejected the claim:

> Here, the information provided to the trial court indicated that a juror had discussed the case with his sister and was unable to make a rational decision. To the extent that the juror's discussion of the case with his sister qualifies as an extraneous influence, the record does not demonstrate a real and substantial possibility that the discussion affected the jury's verdict. The trial court, with the agreement of the parties, questioned the juror about the outside contact and explained at length that the juror could only consider the evidence presented in court, was not permitted to consider anything he may have been told outside of court, and was required to follow the law as instructed by the court. The juror repeatedly acknowledged his understanding of these principles and he agreed that he could follow them and return a true and just verdict based only on the evidence presented in court and the law as instructed by the trial court. Burns's lawyer was permitted to question the juror, and elicited the juror's acknowledgment that he understood that it was only his opinion of the case, not an outside person's opinion, that was important. Because the trial court acted promptly upon becoming aware of the juror's exposure to an outside influence, and given the juror's repeated

12

assurances that he would not consider that outside influence during deliberations and would only consider the evidence presented in court and the law as instructed by the trial court, there is no real and substantial possibility that the juror's discussion of the case with his sister affected his verdict.

Burns further argues, however, that because the juror had shared with the other jurors that he discussed the case with his sister, that was an extraneous influence on the other jurors that denied him a fair and impartial trial. We disagree. The record does not demonstrate a real and substantial possibility that any information that the juror shared with the other jurors about his discussion with his sister affected the jury's verdict. Instead, beyond indicating that the juror had discussed the case with his sister, the jury's note did not indicate that the juror had shared his sister's thoughts on the case with the rest of the jurors. Nor is the content of that discussion otherwise apparent from the record to support a finding that it created a real and substantial possibility of affecting the jury's verdict. Moreover, even if the content of his discussion with his sister was shared with the other jurors, there is no basis for reasonably concluding that the remaining jurors considered that information during deliberations. On the contrary, because the jury advised the trial court of the outside contact and of their concern that the juror was not able to make a rational decision, it appears that the remaining jurors recognized that the outside contact was improper and should not be considered during deliberations. Under these circumstances, there is no real and substantial possibility that any information shared by the juror regarding his discussion with his sister affected the jury's verdict. Accordingly, the trial court did not abuse its discretion by denying Burns's motion for a new trial. Further, because Burns offered no factual support for a finding that the juror's discussion of the case with his sister was considered by the jury or may have affected its verdict, the trial court did not err by refusing to conduct an evidentiary hearing on that issue.

13

*People v. Burns*, 2021 WL 3700097, at * 4.

"[T]he Sixth Amendment does not obligate state trial courts to investigate every allegation of bias or juror misconduct." *Williams v. Bagley,* 380 F. 3d 932, 949 (6th Cir. 2004) (citing *Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991)). Instead, a trial court is constitutionally required to inquire about potential juror bias or misconduct only when "under the circumstances presented there was a constitutionally significant likelihood that, absent questioning about [the potential bias], the jurors would not be as indifferent as (they stand) unsworn," *Id.* (quoting *Ristaino v. Ross*, 424 U.S. 589, 596 (1976) (internal quotation marks omitted), or when "a trial court is presented with evidence that an extrinsic influence has reached the jury which has a reasonable potential for tainting that jury." *Id.* (quoting *Nevers v. Killinger* 169 F. 3d 352, 373 (6th Cir. 1999)). As a general rule, a habeas petitioner is not entitled to habeas relief if the jurors affirm that they were able to put aside the extraneous information and render a verdict based on the evidence presented in court. *Williams v. Bagley*, 380 F.3d at 945 (citing *Irvin v. Dowd*, 366 U.S. 717, 722-23 (1961)).

In *Remmer v. United States*, 347 U.S. 227, 230 (1954), the Supreme Court held that a trial court confronted with an allegation of external tampering or contact with a juror during a trial about a matter pending before the jury "should determine the circumstances, the impact [of the contact] upon the juror, and whether or not it

14

was prejudicial, in a hearing with all interested parties permitted to participate."
*Remmer* placed the burden on the prosecution to rebut the presumption that an
extrinsic influence upon the jury prejudiced the defense.

However, in *Smith v. Phillips*, 455 U.S. 209 (1982), the Supreme Court
subsequently stated, "[t]his Court has long held that the remedy for allegations of
juror partiality is a hearing in which the defendant has the opportunity to prove
actual bias." *Id.* at 215.  In the aftermath of *Smith v. Phillips,* the Sixth Circuit
"has consistently held that *Smith v. Phillips* reinterpreted *Remmer* to shift the
burden of showing bias to the defendant rather than placing a heavy burden on the
government to show that an unauthorized contact was harmless." *U.S. v. Walker*, 1
F.3d 423, 431 (6th Cir. 1993) (collecting cases); *see also Cunningham v. Shoop*, 23
F.4th 636, 649 (6th Cir. 2022) (applying this principle to habeas cases).  A *Remmer*
hearing is thus not required unless the defendant can show that the unauthorized
juror contact "created actual juror bias." *United States v. Frost*, 125 F.3d 346, 377
(6th Cir. 1997).

To be entitled to a *Remmer* hearing, a defendant "must do more than simply
raise the possibility of bias." *Jackson v. Bradshaw*, 681 F.3d 753, 766 (6th Cir.
2012).  Instead, a defendant "must make a colorable claim of extraneous
influence," that is, "one derived from specific knowledge about or a relationship
with either the parties or their witnesses." *Id.*  "Examples of extraneous influences
include 'prior business dealings with the defendant, applying to work for the local

district attorney, conducting an [out-of-court] experiment, and discussing the trial with an employee.'" *Id.* (internal quotation omitted).  A trial court "should consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source when determining whether a hearing is required." *Kowalak v. Scutt*, 712 F. Supp. 2d 657, 692 (E.D. Mich. 2010) (quoting *Sims v. Rowland*, 414 F.3d 1148, 1155 (9th Cir. 2005) (internal quotation omitted)).  To be entitled to a post-trial hearing on an extraneous influence claim, a defendant must "come [ ] forward with clear, strong, substantial and incontrovertible evidence that a specific, non-speculative impropriety has occurred." *Id*. (internal quotation omitted).

Moreover, "[s]ince the trial judge is in the best position to determine the nature and extent of alleged jury misconduct, his decision on the scope of proceedings necessary to discover misconduct is reviewed only for an abuse of discretion." *United States v. Rigsby,* 45 F.3d 120, 125 (6th Cir. 1995) (quoting *United States v. Shackelford*, 777 F.2d 1141, 1145 (6th Cir. 1985)).  Finally, in a habeas corpus case, a state court's findings on whether, and how, an extraneous matter affected jury deliberations "deserve[ ] a 'high measure of deference.'" *Mahoney v. Vondergritt,* 938 F. 2d 1490, 1492(1st Cir. 1991) (quoting *Rushen v. Spain*, 464 U.S. 114, 120 (1983)).

As an initial matter, it is unclear whether the juror's discussion of this case with his sister even amounts to an extraneous influence for which a hearing would

be required.  *See e.g. United States v. Maree*, 934 F.2d 196, 201–02 (9th Cir. 1991)

(Juror's discussing evidence in case with her friends and her listening to her

friends' personal opinions concerning proper outcome subjected juror only to *ex*

*parte* contact, and not to extraneous information and, thus, defendant was not

entitled to new trial absent evidence of actual prejudice); *abrogated on other grds*

*by United States v. Adams*, 432 F.3d 1092 (9th Cir. 2006).

Secondly, the trial judge in this case brought the juror in for questioning by

the court and counsel.  The juror assured the court and counsel that he understood

that he could not consider any outside opinion about the case in reaching a verdict

and would only consider the evidence presented in court.  The juror did not

indicate that he had discussed his sister's opinion about the case with the other

jurors.  The judge credited the juror's credibility that he would not consider his

sister's opinion and would reach a verdict based solely on the evidence.

The question of whether a trial court has seated a fair and impartial jury is a

factual one, involving an assessment of credibility.  *Gall v. Parker,* 231 F.3d 265,

308 (6th Cir. 2000) (citing *Patton v. Yount*, 467 U.S. 1025, 1038 (1984)).  A state

trial court's finding on the impartiality of a juror or a jury is a factual finding that is

presumed correct under § 2254 unless a habeas petitioner can prove otherwise by

convincing evidence.  *Id.* at 334.  The standard of review on habeas does not

permit a court to substitute its view of possible juror bias for the state court's view;

a habeas court may only overturn the state court's findings of juror impartiality if

17

those findings were manifestly erroneous.  *See DeLisle v Rivers*, 161 F.3d 370, 382 (6th Cir. 1998).  Petitioner has presented no evidence to rebut the trial judge's finding.

Petitioner is also not entitled to habeas relief on his claim because he never presented any evidence that this juror actually discussed the contents of his sister's opinion about the case to the other jurors.  Petitioner could have supported his claim by obtaining affidavits from the other jurors.  Because Petitioner's extraneous influence claim is conclusory and unsupported, he is not entitled to habeas relief.  *Kowalak*, 712 F. Supp. 2d at 692-93.

In light of the foregoing, the trial judge's decision to question only the single juror about his discussions with his sister about the case, and not to question all of the jurors, was an adequate inquiry into this juror's exposure to extraneous influences that defeats Petitioner's claim.  *See Middlebrook v. Napel*, 698 F.3d 906, 909-10 (6th Cir. 2012), as amended (Dec. 6, 2012) (state trial judge conducted adequate inquiry to resolve claim of exposure to extraneous influences raised in juror's letter in felony assault prosecution, as required by due process; court questioned the complaining juror and the juror accused of engaging in inappropriate discussions, defendant was given the opportunity to question other jurors but decided it was unnecessary, and defendant failed to show any actual bias).

Petitioner also argues that he was denied the effective assistance of trial counsel because counsel approved of the judge's method of inquiry and not requesting a full *Remmer* hearing.

To prevail on his ineffective assistance of counsel claim, Petitioner must show that the state court's conclusion regarding this claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

Petitioner failed to show that an extraneous influence existed in this case that affected the jury verdict, hence, counsel was not ineffective in failing to request a full hearing to determine whether the other jurors had been exposed to an outside influence. *See Alexander v. Smith,* 311 F. App'x 875, 889 (6th Cir. 2009). Stated differently, Petitioner has failed to show that he was entitled to a *Remmer* hearing, thus, he is unable to show that counsel was ineffective for failing to move for one. *Kowalak v. Scutt*, 712 F. Supp 2d at 702-03. Petitioner is not entitled to relief on his second claim.

## C.    Claim # 3. The sufficiency of evidence claim.

Petitioner lastly contends that there was insufficient evidence to convict him of first-degree criminal sexual conduct.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Id.* at 318-19 (internal citation and footnote omitted) (emphasis in the original).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard.  *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."  *Id.*  Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is

whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).  A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony.  *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992).  A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses.  *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

Under Michigan law, first-degree criminal sexual conduct is committed when there is an intrusion into the genital or anal opening of another person under one of the enumerated circumstances in the first-degree criminal sexual conduct statute.  *See Farley v. Lafler,* 193 F. App'x 543, 548 (6th Cir. 2006).

Petitioner was charged with first-degree criminal sexual conduct under three alternative theories: (1) the sexual penetration occurred during the commission of another felony (felonious assault), (2) Petitioner was armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon, or (3) that Petitioner used force or coercion to accomplish the sexual penetration and caused personal injury.  *See Burns*, 2021 WL 3700097, at * 5.

Petitioner does not contend that the victim's testimony, if believed, would not establish the elements of first-degree criminal sexual conduct under any or all of the three theories advanced in this case. Instead, he argues that the conviction should be reversed because the victim was not a credible witness due to her inconsistent stories and the lack of corroboration.

Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F.3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.* Indeed, the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction, so long as the prosecution presents evidence which establishes the elements of the offense beyond a reasonable doubt. *Brown v. Davis,* 752 F.2d 1142, 1144-1145 (6th Cir. 1985). Petitioner's insufficiency of evidence claim rests on an allegation of the victim's credibility, which is the province of the jury. Petitioner is therefore not entitled to habeas relief on this claim. *See Tyler v. Mitchell,* 416 F.3d 500, 505 (6th Cir. 2005).

Additionally, the fact that the victim's testimony was uncorroborated does not render the evidence in this case insufficient. The testimony of a sexual assault

22

victim alone is sufficient to support a criminal defendant's conviction.  *See United States v. Howard*, 218 F.3d 556, 565 (6th Cir. 2000) (citing *Gilbert v. Parke,* 763 F.2d 821, 826 (6th Cir. 1985)).  The victim's testimony that Petitioner sexually penetrated her while either committing another felony, armed with a weapon, and/or using force and coercion to accomplish the act was sufficient to sustain Petitioner's first-degree criminal sexual conduct conviction, notwithstanding the alleged lack of additional evidence to corroborate the victim's testimony.  *See O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007).  Petitioner is not entitled to relief on his third claim.

## IV.  Conclusion

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Dell v. Straub,* 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002). However, although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## V.  <u>ORDER</u>

Based upon the foregoing, **IT IS ORDERED** that:

(1) the petition for writ of habeas corpus is **DENIED WITH PREJUDICE.**

(2) A certificate of appealability is **DENIED.**

(3) Petitioner will be **GRANTED** leave to appeal *in forma pauperis.*


Date: November 15, 2024                    s/F. Kay Behm
                                           F. Kay Behm
                                           United States District Judge